No. 14,602.

French et al. *v.* Golston.
(100 P. [2d] 581)

Decided March 4, 1940.

Mr. PAUL L. LITTLER, for plaintiffs in error.

Messrs. MOYNIHAN-HUGHES, for defendant in error.

*En Banc.*

Mr. Justice Burke delivered the opinion of the court.

Plaintiffs in error are husband and wife. F. C. French is hereinafter referred to as French, defendant in error as Golston, the Roxy Lynn Mining Company as the company, and the property in question (the Roxy Lode Mining Claim U. S. Survey No. 11588, Lake Mining District, 1500 feet in length and containing approximately six acres) as the Roxy Lode.

December 6, 1937, Golston, alleging fee title in himself, brought ejectment against the Frenches to recover possession of the Roxy Lode. The Frenches answering admitted their possession, otherwise they denied. Furthermore they asserted title in French, (a) by eighteen years adverse possession, (b) by seven years claim and color of title with payment of taxes, and (c) by assignment of a squatter's right. The reply denied all new matter.

Trial was to the court, which found generally for Golston, held that the tax deed under which he claimed conveyed the fee, that the defenses were without merit, and entered a decree in Golston's favor for possession. To review that judgment the Frenches bring error and ask that the writ be made a supersedeas. We have elected to finally dispose of the cause on that application. Of the ten assignments the first goes to the admission of Golston's tax deed, the others amount simply to one, i.e., that the judgment is unsupported by the evidence.

The following history of this title appears from the undisputed evidence. In 1896 the company filed a location certificate on the Roxy Lode and in 1897 it executed a lease to Mary Croft for "that certain tract or parcel of land now enclosed by * * * [her] to-wit: Being a one story house * * * together with the log stable in the rear of said dwelling house. To have and to hold the same during her ownership or occupancy of said house and stable." In 1898 the company received a patent to the Roxy Lode. In 1917 Brown and String-

fellow took out a tax deed on the property and the same year transferred it to Hume, Brown and Turner by warranty deed. The last mentioned grantees still hold title unless divested by tax sales and deeds hereinafter referred to. September 19, 1917, Mary Croft quitclaimed to French "all the buildings and improvements * * * [leased by the company to Mary Croft as above] * * * running for the term of ninety-nine years from date * * * together with all the rights and privileges of the grantor [Croft] above named under and by virtue of the above mentioned and described lease." The land involved and the improvements thereon were sometimes separately assessed. March 1, 1924, the *improvements* were sold for the tax of 1922 and struck off to the county for lack of bidders, and certificate No. 5005 issued therefor. December 3, 1930, the *land* was sold for the tax of 1929, struck off to the county for the same reason, and certificate No. 6227 issued therefor. Here the matter rested until December 7, 1936, when the board of county commissioners passed a resolution authorizing the county treasurer "to make assignment of tax sale certificate No. 5005 covering * * * [improvements] and tax sale certificate No. 6227 covering * * * [land] upon which a part of the improvements * * * stands, for a minimum sum of not less than $500." August 10, 1937, one John McGowan, holder of a prior tax sale certificate, acting through Dorothy French, daughter of plaintiffs in error, as it is claimed, redeemed in McGowan's name from the sale evidenced by said certificate No. 6227 and received from the county treasurer a redemption certificate to that effect. August 17, following, the treasurer wrote McGowan that this redemption certificate "Was erroneously issued as only owners can redeem. I hold the money you paid for the certificate and ask that you call for same." McGowan never did. The following day the treasurer issued to Golston the tax deed under which the latter here claims. It is based solely upon said certificate No. 6227 and specifies only the price appearing

on the face thereof, i.e., $19.56, plus subsequent taxes, $16.44. There were other tax sale certificates on this property with which we are not here concerned. All the above mentioned muniments of title were of record. The Frenches had been in possession of some of the improvements on this property for more than eighteen years under some kind of claim, and had themselves, since taking possession, erected improvements thereon costing approximately $20,000. They had never paid any taxes on the land and had paid no taxes on the improvements since 1925.

 It is fundamental that a plaintiff in ejectment must recover, if at all, on the strength of his own title and not upon the weakness of that of his adversary. 19 C. J., p. 1035, §11; *Horn v. Hurwitz,* 78 Colo. 343, 241 Pac. 727; *Bokel v. Zitnik,* 93 Colo. 565, 27 P. (2d) 753. Title in a third person is therefore generally a good defense. 19 C. J., p. 1076, §68. Possession implies ownership until the contrary is shown and prior possession is sufficient against a mere intruder. *Sears v. Taylor,* 4 Colo. 38. The defense of title in a third person is not available to a mere intruder. 19 C. J., p. 1078, §71.

 Seven reasons are urged against the validity of Golston's tax deed, two of which we think sound: (a) One Turner held a treasurer's deed to one-third of this property, dated January 6, 1922, and duly recorded. Turner was not notified and no sufficient reason appears for that failure. The statute requires notice to all persons "having an interest or title of record." S. L. '37, p. 1053, c. 227, §1; *Brown v. Davis,* 103 Colo. 110, 83 P. (2d) 326. (b) The very certificate upon which Golston's deed was issued had been redeemed by McGowan, holder of a former certificate. He probably had a right to redeem. '35 C. S. A., c. 142, §264; 61 C. J., p. 1245, §1690; *Neff v. Gray,* 157 Okla. 207, 11 P. (2d) 755.

 We need not here determine whether Dorothy French was in fact acting for McGowan, or whether, as is claimed, his name was used as a "dummy" for French.

He obtained a redemption certificate by payment of the face thereof, plus $183.77 subsequent taxes. While that certificate was outstanding the treasurer was powerless to issue a deed. 61 C. J., §1790; *Burnett v. McGrath,* 146 Okla. 83, 293 Pac. 1102. McGowan was entitled to be heard and, doubtless, if his redemption was cancelled, to reimbursement.

Before French could take any advantage of the weakness of Golston's title he was bound to show that he was no mere intruder, which was at least inferentially alleged by the complaint and replication. He accordingly put in evidence his possession, claims and improvements, plus the quitclaim deed and lease, supra. Ineffective as these were to establish title they clearly established his right to put Golston on proof. The trial court found that French held no such exclusive and adverse possession as is required to support the statute. '35 C. S. A., vol. 2, c. 40, §136. His failure to pay taxes defeated his claim under the seven year statute of limitations. Defendants made no serious attempt and could make none, to support their claims to squatter's right on public domain because this property was patented and that patent had been of record for nearly twenty years before French obtained an assignment of the alleged interest of Mary Croft. Moreover, since Mary Croft's lease, if such she had, was not for ninety-nine years but was limited by her ownership, she probably had nothing to assign when she quitclaimed to French. We find no occasion to detail the evidence upon which the court held against defendants on their several claims. Suffice it to say that it is ample.

We should here add that there is evidence, although not very convincing, that when Golston took the assignment of the tax sale certificate on which his deed issued, he also took an assignment of said certificate 5005 and paid the full amount specified in the order of the board of county commissioners. There is neither evidence nor allegation to the contrary and while his

counsel urge that fact in their briefs there is no suggestion in opposing briefs that it is not true. Neither is it denied that separate assessment, sale and certificate as to land and improvements was invalid and that the two must be considered as one. *Colorado F. & I. Co. v. Pueblo Water Co.*, 11 Colo. App. 352, 53 Pac. 232. Hence one who assumed to pay taxes solely on the improvements or solely on the land was merely paying a part of the total tax on the real estate.

■ This brings us to a rather anomalous situation, i.e., neither party has shown legal title to the Roxy Lode, and ejectment is, primarily, a legal action which concerns itself only with legal titles. 19 C. J., p. 1031, §5. But the contrary is the rule in this jurisdiction. *Lewis v. Hamilton,* 26 Colo. 263, 58 Pac. 196; *Whitehead v. Callahan,* 44 Colo. 396, 99 Pac. 57. Such actions are, however, now generally governed by statute. 19 C. J., p. 1030, §4.

■ An unqualified judgment for French would relegate Golston to a statutory action to quiet title, which, being out of possession, he could not maintain. Hence his investment would inure to the benefit of French who has neither legal nor equitable claim thereon. An unqualified judgment for Golston would, on the strength of a bad tax deed, permit him to oust French from long possession and seize improvements worth many times his investment. Each has valuable equities which must, if possible, be protected. Having blundered in securing his tax deed Golston can have no cause of complaint if he be made whole. Having long occupied the premises without title French can have no cause of complaint if he is obliged to carry the tax burden which title would impose. Fortunately we are not without precedent, in the decisions of our own court, for this solution. One out of possession, holding and relying upon a void tax deed, brought ejectment. Judgment was for him unless, within a fixed time, defendant redeemed. The latter brought error and we affirmed the judgment,

applying the requirement of section 7429, C. L. 1921 (§262, c. 142, '35 C. S. A.) and interpreting the condition upon which one may *recover* land sold for taxes as binding upon him who seeks to *retain* land sold for taxes. The case is directly in point. *Central Realty Co. v. Frost,* 76 Colo. 413, 232 Pac. 1111.

Our opinion in department, heretofore handed down, reversing this judgment and directing dismissal of the cause at the costs of Golston, was thereafter set aside and a rehearing granted. That opinion is now withdrawn and this judgment is reversed with directions to the trial court to ascertain the amount paid by Golston, with statutory interest, and enter judgment in his favor for possession, unless French, on or before sixty days from the date thereof, shall pay said sum into court for Golston, in which event the action shall be dismissed at French's costs.